19.

b/ls

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
Case No. 1:03 CV 170



VICTORIA T. McPHATTER, ALEXIS M. )
SCHOENTHAL and HUGH Q. SMITH, on )
behalf of themselves and others similarly situated, )
)
    Plaintiffs, )
)
vs. )
)
JEFFERY LIN SWEITZER, *et al.* )
)
    Defendants. )
_____ )

**BRIEF IN SUPPORT OF
MOTION TO REMAND
FOR LACK OF SUBJECT
MATTER JURISDICTION AND
RESPONSE TO MOTION TO
DISMISS PLANINTIFF'S
CLASS CLAIMS**

NOW COME Plaintiffs Victoria T. McPhatter, Alexis M. Schoenthal and Hugh Q. Smith, on behalf of themselves and others similarly situated , (hereinafter "Plaintiffs" or "Plaintiff Class"), through the undersigned counsel, and file this Brief pursuant to Local Rule 7.3 in support of Plaintiffs Motion to Remand this action to state court for lack of subject matter jurisdiction, and in response to Defendants' Motion to Dismiss Class claims filed herein on or about February 28.

### STATEMENT OF CASE

Plaintiffs filed this action on February 10, 2003 as a class action in state court. The Complaint was filed in Guilford County Superior Court and, simultaneously, Plaintiffs filed a Motion to have the case designated a complex or exceptional case and referred to the North Carolina Business Court. Subsequently, the Defendants removed this action to federal court under 28 U.S.C.§ 1441, relying on the Securities Litigation Standards Act of 1998 ("SLUSA"), as preemptive authority for original federal jurisdiction. In addition, the Defendants moved the court to transfer venue to the Western District of North Carolina, moved the court to dismiss the Plaintiffs' class

action claims, and moved to arbitrate and to dismiss the Plaintiffs' non-class action claims. Plaintiffs have sent the Defendants Interrogatories and a Request to Produce Documents limited to the Defendants Motion to Transfer, and have filed a Motion to Shorten the Time to Answer said discovery. Plaintiffs now move this Court to remand this action for lack of subject matter jurisdiction, and for attorneys fees and costs pursuant to 28 U.S.C.§ 1441.

Following discussion between counsel, the parties have agreed that this Court is the proper Court to determine the Plaintiffs' Motion to Remand for Lack of Subject Matter Jurisdiction and the Defendants' Motion to Dismiss which involve the same or similar issues. The parties have agreed to stay all motions except those motions involving subject matter jurisdiction, and to hold in abeyance discovery and further litigation until the Court resolves the subject matter jurisdiction issue.

### STATEMENT OF FACTS

Plaintiff Class members are retired Bell South employees and, in some instances, their spouses, who brought this action for damages in state court under theories of negligence, negligent misrepresentation, breach of contract, aggravated breach of contract, breach of fiduciary duty, violation of the North Carolina Unfair Trade Practices statute (see N.C.G.S. § 75-1.1 et. seq.), and state law RICO violations (see N.C.G.S. § 75D-1, et. seq.). Named as Defendants are Salomon Smith Barney, Inc. and several of its individual financial consultant employees who had dealings with Plaintiffs.

The Plaintiff Class consists of North Carolina residents who retired from positions of employment, primarily from Bell South, based on statements, representations and promises made in the context of the financial consultant-client relationship established with Defendants. See Complaint, Paragraphs 104 to 152. The Plaintiffs were targeted by Defendants as a market for their

-2-

services because they were eligible for early retirement from their jobs, having attained thirty (30) years of service. Initial investigation reveals that the Class may consist of as many as 300 North Carolina citizens, all of whom had dealings with Salomon Smith Barney financial consultants. Plaintiffs are, for the most part, individuals with high school educations who had no prior experience with financial planning. Upon retirement each Class member had the right to receive and transfer out of company accounts, lump sum retirement funds. Defendants knew this, and deliberately marketed the financial management services of Salomon Smith Barney to Plaintiffs to acquire these funds.

The Defendants solicited the named Plaintiffs and others similarly situated to use their "financial consulting" services at seminars throughout the state and at Bell South offices. See Complaint, Exhibit A. At these seminars and meetings financial planning projections were handed out by Defendants to market their services to Plaintiffs. These showed 12% asset growth per year for the foreseeable lifetime of the exemplar "Mr or Mrs. Bell South". See Complaint, Exhibit B. The documents provided to the Plaintiffs at the seminars contained an express disclaimer stating that the projections did not ". . .constitute a solicitation by use of the purchase or sale of any securities."

In most instances, subsequent to initial contact at seminars or by referral, Plaintiffs would then meet face-to-face with individual Defendants. At those meetings Defendants would further market their financial consulting skills and services to Plaintiff Class members using a second set of income projections. See Complaint, Exhibit C. These depicted payments of unearned income to each person that in most cases began immediately upon retirement, along with a 12% partially compounding income stream. These were shown to last for thirty (30) years. These projections also contained the same disclaimer that, "Neither the information nor any opinion expressed constitutes a solicitation by the use of the purchase or sale of any securities."

-3-

The starting point for the second projection was a sum equal to the lump sum pension benefit the individual was eligible to receive or "roll over" from Bell South or other employer, if he/she retired at that precise point in time. In the individual meetings Defendants would also urge Plaintiffs to retire and entrust their funds to Defendants by stating that an individual, then and there, was financially secure, could make more retired than working, and could live comfortably for a period of time and then be a millionaire. See Complaint, Paragraph 93. Defendants would also counsel Plaintiff to pay off debts in anticipation of retirement, and frequently urged individual Plaintiffs to celebrate their new state of financial security by taking a vacation or purchasing a new car.

As Plaintiffs were not yet 59 ½ years of age, receipt of the periodic payments shown on the projection without tax penalties was contingent on the establishment of a 26 U.S.C. § 72(t) account for each Plaintiff. Defendants furnished this tax planning service to Plaintiffs as part of their financial consulting services.

Based on the financial planning projections provided by the Defendants and their promises, the Plaintiffs retired and delivered their pension benefits along with other funds to the Defendants for financial consulting. In most every instance, the pension benefits constituted the sole retirement monies available to individual Class members. Only after each Plaintiff was persuaded by the representations and urgings of Defendants did he/she retire from employment and transfer pension funds to Salomon Smith Barney for the establishment of 72(t) accounts. Consequently, at that moment Plaintiffs lost the benefit of well paying jobs with seniority and benefits.

Thereafter, and over an extended period of time, Defendants failed to fulfill the promises made to Plaintiffs which were the basis of the financial consultant-client relationships initially created. The income projections were not met. As a consequence, many Plaintiffs were compelled to alter the disbursements from their 72(t) accounts to protect what savings remained. These acts

-4-

triggered tax penalties which Defendants did not counsel or warn against despite the fact they

created and managed the accounts. It is this overall conduct by Defendant that underlies the claims

of negligence and violations of other duties arising under state law set out in the Complaint. These

acts and omissions are the proximate cause of Plaintiffs' damages herein.[1]

QUESTIONS PRESENTED

Plaintiff's Motion to Remand presents the question of whether this action should be

remanded to state court for lack of federal subject matter jurisdiction.

ARGUMENT

## I. STANDARDS FOR DETERMINING MOTION TO REMAND FOR SUBJECT MATTER JURISDICTION

28 U.S.C. § 1441 Code provides for removal of an action originally filed in state court if the

action could have been filed in federal court. The text of Section 1441(a) reads:

> Except as otherwise expressly provided by Act of Congress, any civil
> action brought in a State court of which the district courts of the
> United States have original jurisdiction, may be removed by the
> defendant or the defendants, to the district court of the United States
> for the district and division embracing the place where such action is
> pending.

The removing party has the burden of establishing the existence of federal subject matter

jurisdiction. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir.1994). "If

federal jurisdiction is doubtful, a remand is necessary." *Id.* Where there is no diversity jurisdiction,

federal question jurisdiction is required for removal. *Caterpillar Inc. v. Williams*, 107 S.Ct. 2425,

---

[1]Under North Carolina law, the measure of damages for the claims alleged is not limited
to the measure of "investment" losses. Rather, plaintiffs may alternatively seek damages based
on the benefit of the bargain provided by Defendants. See *Canady v. Crestar Mortgage
Corporation*, 109 F.3d 969 (4th Cir. 1997) (proper measure of damages for breach of contract
under North Carolina law is amount necessary to place injured party in same monetary position
it would have been in if breach had not occurred).

-5-

96 L.Ed.2d 318, 482 U.S. 386, 392 (1987).

In determining the existence of subject matter jurisdiction based on a federal question the "well-pleaded complaint" rule applies. Under the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-13 (1936)). As a result, the plaintiff, as the master of the claims, "may avoid federal jurisdiction by exclusive reliance on state law." *Id.* [2]

In the case at bar, Plaintiffs' complaint presents no federal question, in fact the Complaint specifically denies the pleading of any state or federal securities law violation and alleges six claims, all of which facially are state law claims. Thus, applying the well-pleaded complaint rule, Plaintiff's Complaint on its face presents no federal question and the Court should remand the case to state court. When an action has been removed from state court and the district court subsequently loses the basis for original jurisdiction, in most instances the action must be remanded. *See* 28 U.S.C. §§ 1447(c); *Roach v. W. Va. Regional Jail and Corr. Facility Auth.*, 74 F.3d 46 (4th Cir.1996).

Defendants, however, contend that Plaintiffs' claims in fact raise a federal question under the Securities Litigation and Uniform Standards Act of 1998. Publ. L. No. 105-353, 112 Stat. 3227 (1998), and that jurisdiction in this court is proper. (See ¶ 10, 11 Notice of Removal). In removal cases, because it is the defendant who requests the district court exercise jurisdiction over the matter,

---

[2]Defendants have proferred in support of their motions certain evidence, such as account agreements and account statements which were created after the transactions which are the subject of the Plaintiffs Complaint arose. In the Motion to Remand, the Court is limited to the four corners of the Complaint in determining the issue of remand and should recognize that the injection of any federal or state securities issue is due to the contentions of the Defendants, but is not evidenced in the text of the Complaint.

the burden rests upon the defendant to prove subject matter jurisdiction. *Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148, 151 (4th Cir.1994) (citation omitted); *see also McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936) (holding that the "prerequisites to the exercise of jurisdiction" are "conditions which must be met by the party who seeks the exercise of jurisdiction in his favor"). Because removal jurisdiction raises federalism concerns, removal jurisdiction is strictly construed in favor of remand. *Mulcahey,* 29 F.3d at 151. If the existence of federal jurisdiction is in doubt "a remand is necessary." *Mulcahey,* 29 F.3d at 151.

## II. SCOPE OF PREEMPTION BY SLUSA

The Securities Litigation Uniform Standards Act of 1998, extends federal jurisdiction over certain class actions based upon state law where certain preconditions are met. 15 U.S.C. § 77p(b)-(c); 15 U.S.C. § 78bb(f)(1)-(2). This statute provides, in pertinent part, that, "no covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging (a) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or (b) that the defendant used or employed any manipulative or deceptive device in connection with the purchase or sale of a covered security." 15 U.S.C. § 77p(b) and 78bb(f)(1).

Numerous recent federal court decisions have addressed the application of SLUSA in the context of removal and remand proceedings. As noted by the court the recent case of *Burns v. Prudential Securities,* 116 F.Supp.2d 917 (N.D. Ohio 2000), the burden of proof on a party seeking removal of an action based on SLUSA is clear.

> Broken down into its component parts, SLUSA obligates the removing party to prove that: 1) the class action sought to be removed is a "covered class action," 2) the class action complaint is

-7-

based on state law claims, 3) there has been a purchase or sale of a "covered security" and 4) in connection with that purchase or sale, plaintiffs allege that defendants either "misrepresented or omitted a material fact" *or* "used or employed any manipulative or deceptive device or other contrivance."

116 F.Supp.2d at 921.

Numerous decisions have held that each of these four requirements must be met to support a successful removal of a state class action and to justify its subsequent dismissal. This analysis is acknowledged by Defendants. See Memorandum of Law in Support of Defendants Motion to Dismiss Plaintiffs' Class Claims at 5.

In the present case, the first two criteria set up by the statute are satisfied. The Complaint filed by Plaintiffs defined a "covered class action" under the statute. The causes of action asserted in the complaint; i.e., negligence, breach of contract, aggravated breach of contract, negligent misrepresentation, breach of fiduciary duty, equitable estoppel, North Carolina unfair trade practices and state rico, are plainly state law claims. Thus, Defendants ability to successfully remand the instant case requires that they demonstrate Plaintiffs' claims arise out of the purchase or sale of a "covered security" under this statute, and that in connection with that purchase or sale there was a misrepresentation or omission of material fact, or the use of manipulative or deceptive device.

### III. COMPLAINTS REGARDING NEGLIGENT TAX ADVICE, RETIREMENT PLANNING, JOB COUNSELING, AND ACTS WHICH CONSTITUTE BREACH OF COMMON LAW DUTIES ARE NOT PRE-EMPTED BY SLUSA.

Not every state common law dispute tangentially involving a security or the purchase or sale of securities in general is pre-empted by SLUSA. See *Gutierrez vs. Deloitte & Touch*, 147 F.Supp. 2d 584 (W.D. Tex. 2001); *Shaw vs. Charles Schwab & Company, Inc.*, 128 F.Supp.2d 1270 (C.D. Cal. 2001); *Abada v. Charles Schwab & Company, Inc.*, 127 F.Supp.2d 1101 (S.D. Cal. 2000), *Burns v. Prudential Securities* 116 F.Supp.2d 917 (N.D.Ohio 2000); *Lalondriz v. USA Networks,*

-8-

*Inc.,* 54 F.Supp.2d 352 (S.D.N.Y. 1999). With the demise of the regulatory wall of separation between banks, insurance companies and the securities industry originally provided by such legislation as the the Glass-Stegall Act of 1933, 12 U.S.C. § 227, firms such as Salomon Smith Barney that were prohibited from engaging in activities outside their core financial business, have begun providing new and previously unrelated financial services. This has enabled traditional brokers of stock such as Salomon Smith Barney to venture into areas not strictly related to the sale and purchase of securities acting under the rubric of "wealth management" or "financial consulting". These activities include an array of financial services such as mortgage brokerage, insurance brokerage, second home loans, banking services, credit cards, tax advice, legal and estate planning advice and financial planning. It is services of this type rather than, strictly and narrowly, the sale or purchase of a particular security that gives rise to the claims set out in the Complaint. Attached hereto as 'Exhibit A' are pages from Defendant Salomon Smith Barney's website (http://www.smithbarney.com) currently presented to the public that illustrated the expanded services marketed by the firm's financial consultants. As noted, these include personal financial planning, educational funding, retirement planning, estate planning, insurance, charitable giving and establishment and management of trusts.[3] Negligence and the breach of duties in connection with the rendering of services such as these, not the sale of any particular security, forms the basis of the claims in the Complaint.

SLUSA has not yet been the subject of any Fourth Circuit Court of Appeals decision. *Arilai ex rel Massey Energy Co. v. Blankenship,* 234 F.Supp. 2d 606 (SD.W.Va. 2002), allowing remand of a shareholder's derivative suit which was not completely preempted by SLUSA is the sole district

---

[3]Plaintiffs note this material is subject to judicial notice by the Court pursuant to F.R.E. 201.

court case interpreting SLUSA in this Circuit.

The most recently decided of the 56 cases which have involved interpretation of SLUSA and motion to remand motions is *Gray v. Seaboard Securities*, ___ F.Supp.2d ___, 2003 WL 186632 (N.D.N.Y., Jan. 29, 2003), in which a group of New York clients brought an action for damages against their stockbroker under state law theories of fraudulent inducement to open account, the NY state consumer protection statute, and negligent supervision. The court in examining the complaint held that because the actions related to opening the accounts and not to the purchase and sale of specific securities, SLUSA did not preempt such claims. This case properly sets the framework for this Court to examine Plaintiffs' Complaint to determine if it contains SLUSA issues.

"Under SLUSA," the critical question is whether [the plaintiff's] amended complaint can reasonably be read as alleging a sale or purchase of a covered security made in reliance on the allegedly faulty information ...."*Green v. Ameritrade, Inc.*, 279 F.3d 590, 598 (8th Cir.2002). " '[T]he incidental involvement of securities [does] not implicate the anti-fraud provisions of the securities laws." ' *Spielman*, 2001 WL 1182927 at *3 (quotation and citation omitted). Rather, "[t]he fraud must be 'integral to the purchase and sale of the securities in question." ' *Id.* (quoting *Pross*, 784 F.2d at 459)." 2003 WL 186632 at 8.

All of the factual issues which must be submitted to a jury have been outlined by the Plaintiffs in their Complaint (¶ 75) and not a single question which must be determined can fairly be said to require the jury to decide whether a sale or purchase of a covered security was made in reliance on faulty information. Put differently, none of the elements of these torts turn on any issue which could be considered a "federal securities" law violation, or which is integral to the purchase and sale of securities.

In order to establish that removal is proper and avoid remand, the burden would be on the

-10-

Defendants to show that each and every one of the Plaintiffs' counts based upon state common law are in fact disguised "federal securities" violations. The gist of the Complaint does not turn on any specific investment occurring after the successful solicitation of the Plaintiffs to leave their jobs and place their retirement funds with the Defendants, but rather what took place before they left their jobs and entrusted money to the financial consultants. As stated in the Complaint, material breaches of basic duties owed took place before any particular investment took place.

## IV. THE BROAD SCOPE OF SERVICES OFFERED BY DEFENDANTS DOES NOT INVOLVE THE SALE OR PURCHASE OF A "COVERED SECURITY" AS CONTEMPLATED BY SLUSA.

In contrast to the broad array of services furnished by Defendants to Plaintiffs that give rise to the claims in this action, a successful preemption requires allegations that the class claims involve the purchase or sale of the "covered security." For the purposes of SLUSA, a "covered security" is defined in 15 U.S.C. § 77r(b), which states,

> Covered securities. For purposes of this section, the following are covered securities:
> (1) Exclusive Federal registration of nationally traded securities. A security is a covered security if such security is -
> (A) listed, or authorized for listing, on the New York Stock Exchange, or listed, or authorized for listing, on the National Market System of the NASDAQ Stock Market (or any successor to such entities);
> (B) listed, or authorized for listing, on a national securities exchange (or tier or segment thereof) that has listing standards that the Commission determines by rule (on its own initiative or on the basis of a petition) are substantially similar to the listing standards applicable to securities described in subparagraph (A); or
> (C) is a security of the same issuer that is equal in seniority or that is a senior security to a security described in subparagraph (A) or (B).
> (2) Exclusive Federal registration of investment companies. A security is a covered security if such security is a security issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940 (15 U.S.C. 80a-1 et seq.).

See *Gutierrez*, 174 F.Supp.2d at 590. (Covered security is one listed on a national exchange or

issued, duly registered, by an investment company.)

From the outset of the communications between the parties, the documentation created by the Defendants and supplied to the Plaintiffs provided the following disclaimer when discussing the projected rates of return which could be achieved if the Plaintiffs entrusted their retirement future to the Defendants.. *"Neither the information nor any opinion expressed constitutes a solicitation by use of the purchase or sale of any securities ".* (See Complaint, Exs. B and C). In light of this threshold representation, the Defendants' current legal position that this disclaimer should not be operative because communications were in fact made in connection with the sale or purchase of securities is ironic at the least, and calls into doubt the credibility of their legal position. As financial consultants receiving the sole retirement funds for hundreds of persons, Defendants should not be allowed to bait and switch. Basic principles of estoppel would prevent the result that Plaintiffs who relied upon the disclaimer and were enticed to leave their employment and convert their pensions to cash with Defendants' assurances that the returns were not contingent on the sale or purchase of specific securities, are now prevented from taking court action against Defendants because of the securities laws. [4]

It was the disclaimed projection information, along with representations of imminent wealth and financial security, that was relied upon by the Plaintiffs in deciding to abandon their jobs and turn over their retirement accounts to the Defendants. Unless the Defendants convinced the Plaintiffs that it was in their economic interest to leave their jobs so that they could achieve the rates of return presented, the Defendants could not get their hands on the Plaintiffs' financial resources. As a precondition to the Plaintiffs obtaining their pension funds in order to roll them over to a

---

[4]The purpose of the disclaimer was in part avoid the responsibility imposed by the NASD on its members from using such projections for any purpose.

-12-

privately maintained investment account, they were required to quit their jobs and retire from employment at Bell South and elsewhere, and then engage Defendants as their financial consultants. The gravamen of the Plaintiffs Complaint surrounds these transactions and occurrences, and not the subsequent investment of the funds conveyed.[5]

Numerous published decisions have rejected preemption by SLUSA where the of class complaint involves services unrelated to the sale of a specific security. See *Green v. Ameritrade, Inc.*, 279 F.3d 590 (8th Cir.2002). *Gutierrez v. Deloitte & Touche*, 147 F.Supp.2d 584 (W.D.Tex.2001); *Shaw v. Charles Schwab & Co.; supra; Burns v. Prudential Securities, supra; Gray vs. Seaboard, supra.* In *Shaw*, investors brought suit in state court against a brokerage firm challenging the brokers online trading practices. The defendants thereafter sought removal of the case under SLUSA. Remanding the case to state court, the federal court found that state law claims related to Defendant Charles Schwab's commission rate for web based training and the inaccuracy of representations regarding said system were not related to securities as called for by SLUSA. Instead, in support of its decision to remand, the court noted:

> The claims related to the vehicle by which Schwab delivered securities rather than the securities themselves. Plaintiffs had not alleged any misrepresentations or other misfeasance that is intrinsically related to the securities being traded. The plaintiffs do not allege that defendants fraud induced them to invest in particular securities. Rather, the Plaintiffs contend that Defendant's fraud induced them to select Defendant as their broker rather than some other brokerage firm. It would appear that Plaintiffs' suit lies more in the realm of consumer protection than securities litigation.

> 128 F.Supp.2d 1274.

---

[5]As the Defendants' removal petition suggests, the Plaintiffs may in fact have legitimate federal or state securities claims, however claims for relief for these actions have not been plead, and are not at issue before this court.

-13-

The same analysis is present in the case of *Gutierrez*. There state law claims were brought against an accounting firm under Texas law alleging generally that the firm's malpractice in issuing inaccurate audit reports induced class members to hold securities in suspect companies. As a consequence, plaintiff class members lost money. In denying SLUSA preemption and ordering remand, the court noted that the malpractice in question led to the holding and not the purchase and sale of securities. For this reason the claims did not establish preemption. 147 Supp.2d at 587. See also *Gordon v. Buntrock*, 2000 W.L. 556763 (N.D. Ill. 2000).

## V. AS REQUIRED FOR SLUSA JURISDICTION, THE COMPLAINT DOES NOT CONTAIN THE ELEMENTS OF A FRAUD OR MISREPRESENTATION CLAIM OR THE REQUIRED ELEMENT OF SCIENTER.

SLUSA has been the subject of 11 opinions by five circuit courts. The Defendants cite two cases for the proposition that SLUSA should be read very broadly to preempt state law claims that require no proof of misrepresentations or omissions and are, at most, tangentially connected to the purchase or sale of a covered security. See *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F3d 101 (2d Cir., 2001); *Prager v. Knight/Trimark Group, Inc.*, 124 F. Supp. 2d 229 (D.N.J.2000). However an examination of the allegations in the complaints in both these cases clearly shows that the Plaintiffs in *Lander* generally alleged fraud with regard to specific securities and stated the elements of *scienter* in the pleadings. Likewise in *Prager*, the complaint invoked claims of fraud and dishonesty by a market marker with respect to trading practices. Neither case applies as here where the complaint makes no comparable allegations.

Determining whether a plaintiff's state claim is completely preempted by SLUSA requires an inquiry into whether the state law remedies sought are independent of SLUSA. The focus of this inquiry is on the face of the complaint to determine the source of the duty allegedly breached by the

-14-

defendants. A defendant cannot, merely by characterizing a complaint or injecting a federal question into what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated.

Here the Defendants have injected a "securities fraud" or "misrepresentation" claim into the Plaintiffs' Complaint which is not present. They have erroneously stated that the Complaint "allege(s) that their investment accounts failed to reach certain rates of return promised by employees of Defendant SSB". (Notice of Removal, ¶. 3 - 4). Nowhere does Plaintiffs Complaint allege a securities fraud, allege the necessary elements which compose such a claim, or allege the "scienter" necessary for such a claim to be made. As shown in the Complaint, see ¶ 75, the state law claim elements do not require a finding of material misrepresentation or omission, a deceptive device, or "scienter" for their proof. Therefore, the misconduct of the Defendants does not contain, collectively or singularly, the elements of a cause of action under federal or state securities laws. Defendant's in their Motion cite Paragraph 98 of the Plaintiffs' Complaint as the source of this contention; however, a reading of that paragraph in the context of the Complaint merely shows that the Defendants were negligent in not disclosing to prospective clients the rates of return existing clients were actually achieving. Negligent conduct does not present a securities claim under 10(b)5.

The Plaintiffs complaint is based upon state law theories of negligent conduct, breach of contract, state unfair trade practices, state RICO and breach of fiduciary duty which are independent of federal securities law considerations for their resolution. None of these state claims involve the necessary fraudulent element of scienter needed to establish a securities fraud claim. If the Defendants wish to engage in "wealth management" or "financial consulting" activities outside the boundaries of securities sales and purchases, they may do so but if they engage in these activities, they are subject to state common law duties such as to act with ordinary care in the conduct of those

-15-

activities.

Defendants concede that SLUSA does not define the statutory phrase "in connection with the purchase or sale of a covered security". Because the Supreme Court has not ruled on this issue and federal courts interpreting this statute have not agreed on this issue, it is an open legal question whether or not Congress intended the phrase "in connection with" to have the same meaning under SLUSA that it has under Rule 10-b(5) in this Circuit. See *Green v. Ameritrade, Inc.,* 279 F.3d 590 (8th Cir.2002). See also *Gutierrez, supra* ; *Shaw, supra.* Compare *Dudek v. Prudential Securities, Inc.*, 295 F.3d 875 (8th Cir. 2002); *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334 (11th Cir. 2002); *Behlen v. Merrill Lynch,* 311 F.3d 1087 (11th Cir. 2002).

Because interpretations have differed widely, the most logical method to differentiate between the varying approaches is to regard the SLUSA coverage problem on a case-by-case basis and analyze the allegations of the complaint to determine which if any counts invoke securities transactions. Plaintiffs' Complaint does not involve any allegation that any particular security or group of securities were purchased or sold. Because it does not, the important nexus required under *Blue Chip Stamps v. Manor Drug Stores,* 431 U.S. 723, 95 S.Ct.1917, 44 L.Ed.2d 539 (1975) is not present. In *Blue Chip,* the Supreme Court held that there is no cause of action under section 10b-5 unless a challenged misrepresentation or omission caused the plaintiff to buy or sell a particular stock. 421 U.S. at 748-49.

In this factual analysis, it is important to remember the written representation given to the Plaintiffs by the Defendants states that the representation is **not** made in connection with the purchase and sale of securities. Defendants now ignore this inconvenient fact. Defendants' argument that SLUSA applies because a covered security was subsequently placed in Plaintiffs' accounts invites the Court to overlook the fact that the accounts were created based on a

-16-

representation that the information shown did not involve the purchase or sale of securities. The Defendants further ignore the fact that in order to get to the funds to be invested the Plaintiffs had to leave their jobs, a transaction having nothing to do with the investment in securities for which the Plaintiffs have been severely damaged.

There must be a closer nexus between the representation and a specific covered security for SLUSA to preempt state law.[6] See *Zoren v. Genesis Energy, L.P.*, 195 F.Supp.2d 598 (D.Dela. 2002); *Korinsky v. Salomon Smith Barney, Inc.*, 2002 WL 27775 (S.D.N.Y. 2002); *Denton v. H & R Block Financial Advisors, Inc.*, 2001 WL 1183292 (N.D. Ill. 2001). The Defendants' approach is at odds with the well-settled principle, operative in the Fourth Circuit, that federalism concerns impel the presumption that Congress does not always intend to displace a large swarth of state law. *Darcangelo v. Verizon Communications, Inc.*, 292 F2d 181 (4th Cir., Md 2000), *Custer v. Sweeney*, 89 F.3d 1156 (4th Cir. Va, 1996), see also *Greater New York Metro. Food Council, Inc. v. Giuliani*, 195 F.3d 100, 105 (2d Cir.1999) . Thus, the fact SLUSA may preempt some claims for relief in state court does not entitle a defendant to broadly invoke federal preemption against any complaint or an entire complaint in which a sale or purchase may be tangentially concerned.

Put differently, SLUSA preemption does not grant to the Defendants who are engaging in financial planning and tax advice the ability to be relieved of the state common law duties in advising their clients. *Custer v. Sweeney, supra*, is a good example. There, an attorney providing legal services to a retirement plan was not entitled to have a state malpractice claim removed to federal court under ERISA preemption principles, even though he was a fiduciary. Similarly, a

---

[6]The recitation of the subsequent investment history of the Plaintiff McPhatter is not pled in the complaint and is improper for this court to consider the evidence therein in either this Motion to Dismiss or the Motion for Remand which are based completely upon the allegations of the Complaint.

-17-

financial counselor is not entitled to have state law claims for negligence and breach of duties removed to federal court under SLUSA merely because the services may involve securities acquisition or fiduciary responsibility. For SLUSA to preempt state law claims , the Plaintiffs' claims must stem from securities fraud violations under federal or state law to be tried in federal court as 10(b)5 claims, and involve the purchase or sale of a covered security.

## VI. WHERE THERE IS NO SUBJECT MATTER JURISDICTION, REMAND OF SOME OR ALL OF THE PLAINTIFFS CLAIMS IS THE PROPER REMEDY.

Because there is no federal subject matter jurisdiction under SLUSA , this court would not have the requisite jurisdiction to determine the Defendants' Motion to Dismiss, Motion to Transfer or the Motion to Compel Arbitration of Non-Class Claims, and the Plaintiffs' Complaint should be remanded. When an action has been removed from state court and the district court subsequently loses its basis for original jurisdiction, in most instances the action must be remanded to the state court. *See* 28 U.S.C. §§ 1447(c).. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, *the case shall be remanded.*"28 U.S.C.A.§§1447(c) (emphasis added). The plain language of 1447(c) gives "no discretion to dismiss rather than remand an action" removed from state court over which the court lacks subject-matter jurisdiction. *International Primate Protection League v. Administrators of Tulane Educational Fund,* 500 U.S. 72, 89, 111 S.Ct. 1700, 1710, 114 L.Ed.2d 134 (1991) (internal quotation marks omitted); *Roach v. W. Va. Regional Jail and Corr. Facility Auth.*, 74 F.3d 46 (4th Cir.1996). In the event, that the Court determines some of the Plaintiffs counts are pre-empted by SLUSA, and some are not, then the proper remedy would be to remand those counts to state court which are not pre-empted and not to dismiss the Complaint in its entirety.

-18-

## Conclusion

For the reasons expressed herein, the Plaintiff's Motion to Remand for Lack of Subject Matter Jurisdiction should be granted and Defendants' Motion to Dismiss Class Claims should be denied.

This the _19_ day of March, 2003.

_[signature]_

Robert N. Hunter
Attorney for Plaintiff Class members
N.C. State Bar No.: 5679

_[signature]_

Robert G. McIver
Attorney for Plaintiff Class members
N.C. State Bar No.: 13310

OF COUNSEL:

**HUNTER, HIGGINS, MILES, ELAM & BENJAMIN, PLLC**
101 West Friendly Avenue, Suite 500
Greensboro, North Carolina 27401
Telephone:    (336) 273-1600
Facsimile:    (336) 274-4650

OF COUNSEL:

**TRACY PRIDE STONEMAN, P.C.**
301 Snowcrest
Westcliffe, CO 81252
Telephone:    (719) 783-0303
Facsimile:    (214) 853-9300

-19-

## CERTIFICATE OF SERVICE

**I HERBY CERTIFY** that on the ___19___ day of March 2003, a copy of the *Brief in Support of Motion to Remand for Lack of Subject Matter Jurisdiction* was mailed, via first-class United States mail, postage prepaid, addressed as follows:

> George C. Covington
> John H. Culver
> Kennedy Covington Lobdell & Hickman, LLP
> Hearst Tower, 47th Floor
> 214 North Tryon Street
> Charlotte, NC  28202

Robert G. McIver

# SMITHBARNEY
citigroup

Portfolio    **Research**   **Trading**   **Payments**   **Tools**   **Products**   **Services**   **My Access**

Home ▪ Search ▪ Careers ▪ Help ▪ E-mail ▪ Log On

Products   Managed Money   Consulting Group   About CG   Role of Your Financial Consultant

## @ SMITHBARNEY access℠

```
Quotes, News, Research
[            ]  [Go]
⦿ symbol  ◯ name
```

**MANAGED MONEY**

▸ Citigroup Alternative Investments
▾ Consulting Group
  ▸ About CG
  ▸ Individual Investors
  ▸ Institutional Services
  ▸ CG Research
  ▸ Investment Opportunities
  ▸ Communications Toolbox
  ▸ FAQs
▸ Guided Portfolio Management
▸ Managed Futures
▸ Portfolio Management
▸ Citigroup Asset Management
▸ TRAK
▸ Private Portfolio Group

# Consulting Group

## About CG ◆ Role of Your Financial Consultant

▸ Client Benefits      ▸ Four Step Investment Process
▸ Role of Your Financial Consultant

From the outset of your relationship, it is critical to understand the role your Financial Consultant will fulfill in the development and ongoing evaluation of your investment relationship. The long-term client consultant relationship is designed to link a client's specific investment needs to the capabilities of appropriate high-quality investment managers within the context of objective oversight of the entire investment process.

### ◆ Role of the Smith Barney Financial Consultant




EXHIBIT

A



**Financial Consultant Responsibilities:**

- Evaluate past performance as needed
- Determine appropriate asset allocation
- Establish customized investment performance benchmarks
- Screen Database for appropriate manager candidates
- Communicate important investment manager evaluation findings
- Analyze and communicate client investment performance, both short and long term
- Make specific and timely recommendations for client's consideration throughout the relationship
- Keep abreast of investment managers, the economy, securities markets and investment styles

**♦ The Process of Investing**

The process begins with a discussion of your investment concerns, experiences, sensitivities and goals. If required, an assessment of past objectives and performance will be conducted. The information you provide will enable your Financial Consultant to develop specific written investment objectives and policies. This may be the most important aspect of the relationship since without a clear long-term plan, investment activities would be aimless. A simple analogy would be to embark on a trip

Case 1:03-cv-00170   Document 19   Filed 03/19/03   Page 22 of 26

without a destination.

Once objectives and guidelines are developed, the next vital decision is allocating assets, by identifying the correct blend of stocks, bonds and cash equivalents. Virtually all experts agree that asset allocation is a major determinant of investment performance. A meaningful performance benchmark must also be identified to help ensure that your goals are being met. Comparing performance to an arbitrary stock or bond index may be irrelevant unless it adequately reflects the securities within your portfolio.

▸ Learn more about diversification and asset allocation.

Using the Consulting Group database, Financial Consultants will diligently screen investment management firms, searching for those investment disciplines, philosophies and results that best match your requirements. After managers are carefully selected the monitoring process begins.

▸ Learn more about how Consulting Group selects and evaluates investment managers.

It is your Financial Consultant's obligation to inform you when it makes sense to consider modifying your investment strategy. Adding a manager or adjusting your asset allocation due to changing conditions or new opportunities are but two examples.

**How You Can Help**

- Communicate investment goals and concerns
- Keep your Financial Consultant informed of significant financial developments or goal changes
- Be available for periodic face-to-face investment reports
- Review Financial Consultant correspondence
- Maintain a long-term perspective

 **For more information, please contact your Smith Barney Financial Consultant.**

Although the statements of fact and data in this report have been obtained from, and are based upon, sources that the Firm believes to be reliable, we do not guarantee their accuracy, and any such information may be incomplete or condensed. All opinions included in this report constitute the Firm's judgment as of the date of this report and are subject to change without notice. This report is for informational purposes only and is not intended as an offer or solicitation with respect to the purchase or sale of any security. Past performance is not a guarantee of future results.



**A member of citigroup.**

Privacy, Terms and conditions

© 2003 Salomon Smith Barney Inc. All rights reserved. Member SIPC. Smith Barney is a division and service mark of Salomon

**citigroup**
www.citigroup.com

Smith Barney Inc. and its affiliates and is used and registered throughout the world. CITIGROUP and the Umbrella Device are trademarks and service marks of Citicorp and its affiliates and are used and registered throughout the world.

Case 1:03-cv-00170   Document 19   Filed 03/19/03   Page 24 of 26

# SMITH BARNEY
citigroup

@ SMITH BARNEY access℠

**Quotes, News, Research**

[Go]

⊙ symbol    ○ name

**CAREER CENTER**

▸ Our Company
▸ Campus
▸ Corporate
▾ Financial Consultant
 • Who Are We Looking For?
 • How to Join Us
 • Profiles
 • Apply Now

Career Center: Financial Consultant

# Financial Consultant

## Build a Career as You Build A Business

Smith Barney continues to distinguish itself as one of the highest-quality and fastest-growing full-service wealth management firms in the financial services industry. There's a very good reason for that success: our team of more than 12,000 Financial Consultants.

In more than 500 offices, our Financial Consultants service more than 7.1 million client accounts representing nearly $1 trillion in client assets worldwide. Our clients range from individual investors to small- and mid-sized businesses, as well as large corporations, non-profit organizations and family foundations.

Through the full range of affiliated Citigroup companies, we provide an end-to-end platform of financial services—everything from cash management to financial planning, brokerage services, estate planning, block trading and alternative investments, in addition to M&A advisory services for middle-market privately held companies. We are also one of the nation's leading providers of defined benefit and defined contribution plans, as well as corporate stock plan services and administration.

### ◆ The Role of a Financial Consultant

Smith Barney has an exciting, entrepreneurial environment that stresses, and rewards, exceptionally talented, motivated and dynamic individuals. Our Financial Consultants are the key to our success. By combining your personal skills with all the resources of Smith Barney and Citigroup, you will help clients realize their financial goals. It starts by assessing a client's circumstances and objectives, and based on those, you will go on to provide individualized, highly strategic investment consulting. You will make available the full range of wealth building, managing and preserving services throughout the Firm, including mutual funds, stocks, bonds, IRAs, credit & lending, insurance, estate planning, philanthropy and more.

### ◆ Entrepreneurs Wanted

While we can tell you what a Financial Consultant does, we don't define your role here. We provide you with the training, tools and guidance you'll need to maximize your potential—but from there it's left entirely up to you. We're looking for people with boundless drive and determination, aggressive entrepreneurial go-getters who welcome the challenge of unlimited possibilities, and the chance to

Case 1:03-cv-00170   Document 19   Filed 03/19/03   Page 25 of 26

03/19/2003

make the most of their abilities. No previous financial-services experience is required, a bachelor's degree is preferred with five years of business experience and proven success in a previous career. And a burning desire to create your own success.

You'll start your career in a 36-month paid training program, which includes intensive study at our state-of-the-art facility in Hartford, CT, and training in a field office supervised by a branch manager. We'll give you the preparation hands-on experience you need to run your business-a business you build, nurture, and grow.

♦ **Your Reward**

Your fortunes are tied directly to those of your clients. We'll make sure you have ample opportunities to earn your rewards but, again, from there it's entirely up to you. Unlike other firms, we don't set any limits for you.

This Site does not constitute an offer of employment with respect to any employment position described herein. Offers are only made to qualified candidates who successfully complete our application and selection process. We reserve the right to eliminate, modify or change any of the employment positions or compensation and benefit plans described herein. This Site is limited to positions available in the United States only. Salomon Smith Barney is an equal opportunity employer M/F/D/V.

Smith Barney and Smith Barney Access are registered service marks of Salomon Smith Barney Inc. By using this Site you agree to certain terms and conditions which we may modify. This Site is for informational purposes only and does not constitute an offer to sell or a solicitation of an offer to buy any security which may be referenced herein. Offers can only be made where lawful under applicable law.

**citigroup**
www.citigroup.com

A member of citigroup↑
Privacy, Terms and conditions
© 2003 Salomon Smith Barney Inc. All rights reserved. Member SIPC. Smith Barney is a division and service mark of Salomon Smith Barney Inc. and its affiliates and is used and registered throughout the world. CITIGROUP and the Umbrella Device are trademarks and service marks of Citicorp and its affiliates and are used and registered throughout the world.